## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARTIN DEMAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-1785-B |
| | § | |
| UNUM LIFE INSURANCE COMPANY | § | |
| OF AMERICA and VERIZON | § | |
| COMMUNICATIONS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Plaintiff Martin Demand ("Demand") filed this lawsuit against Unum Life Insurance Company of America ("Unum") and Verizon Communications, Inc. ("Verizon") to recover short-term and long-term disability benefits under the employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S. C. § 1001, *et seq.* Now before the Court is the Motion for Summary Judgment filed by Defendant Unum (doc. 19). Upon review of the Motion and relating filings, the Court **GRANTS** partial summary judgment in favor of Unum on all of Demand's claims against it.

## I. Factual and Procedural Background[1]

### A. The Parties and Plan

Verizon established an employee welfare benefit plan under which certain of its employees

---

[1] Demand does not dispute the statement of facts presented by Unum. Therefore, the relevant facts presented below are taken from Unum's extensive "Statement of Material Undisputed Facts from the Administrative Record" contained in its Brief in Support of the Motion for Summary Judgment. The Court assumes these facts are true for purposes of its legal analysis.

were eligible for, among other things, short and long-term disability coverage (the "Plan"). The Plan was self-insured by Verizon. Demand participated in the Plan as an employee of Verizon. Verizon is the Plan sponsor and, at the time of Demand's claim for short-term disability, Unum had served as the plan administrator. Pursuant to the terms of an "Administrative Services Agreement Self-Insured Income Protection Plan" (the "ASA"), Unum was delegated discretionary authority to administer disability benefit claims under the Plan:

> Plan Administrator, through it's [sic] contracting agent, Verizon, hereby delegates to UnumProvident the discretionary authority and decision making responsibility for the purposes of carrying out its responsibility under the Department of Labor ("DOL")-mandated claims process to the fullest extent permitted by law to determine eligibility for Benefits under the Plan and the Takeover Plan and to construe, interpret and enforce the terms of Plan and the Takeover Plan as they relate to Claims for Benefits.

Unum administered disability benefit claims under Verizon's Plan from February 24, 2003 until June 30, 2006, when the ASA terminated.

The Plan documents provide short-term disability (or "STD") benefits as follows:

> Verizon automatically provides eligible employees with STD coverage at no cost. You may receive STD benefits for up to 52 weeks if you are determined to be totally disabled under the terms of this plan. Any STD benefits you receive are based on your base pay in effect at the time of your total disability and the level of income protection is based upon your years of service with Verizon.
>
> * * *
>
> Under the terms of the STD plan, you are considered totally disabled if, as a result of illness or injury:
>
> • You are unable to perform the essential functions of your own job or any other job the company may offer you that you are reasonably qualified because of training, education or experience, and

- You are not working at another job, including self employment, other than a temporary alternative work assignment with Verizon.

**B. Demand's Claim for Short-Term Disability Benefits**

On March 31, 2005, Demand contacted Unum by telephone to make a claim for short-term disability benefits under the Plan. Demand, a Verizon senior staff consultant, advised Unum that he had a stroke several years ago, and recently had some of the same symptoms, including back pain. According to Demand, his attending physician, Michael Dotti, M.D., told him to stop working and scheduled surgery for April 8, 2005. On April 5, 2005, Unum acknowledged receipt of Demand's claim, and requested certain documents, including a job description from his employer, medical records, and a statement from his attending physician. Unum also requested Demand's medical records from Dr. Dotti.

On April 29, 2005, Dr. Dotti provided Unum a partially completed physician's statement, an April 27, 2005 letter wherein Dr. Dotti generally describes Demand's medical history (but states that he does not feel qualified to opine on Demand's possible restrictions and limitations), and his notes from a March 28, 2005 office visit. On May 2, 2005, Unum contacted Demand and advised him that the records did not reflect that Dr. Dotti told him to stop working, and that he had been scheduled for pain shots (not surgery) on April 8, 2005. Demand agreed to provide additional medical records to Unum. On May 10, 2005, Unum wrote Dr. Dotti again, stating that it had received some of his records regarding Demand, but that it needed additional records, including a fully completed attending physician's statement and estimated functional abilities form.

**C. Unum Approves Demand's Claim for Short-Term Disability Benefits**

On May 11, 2005, Dr. Dotti wrote Unum clarifying that on March 28, 2005, he had told

Demand he thought it was reasonable for Demand to go on short-term disability. Accordingly, on May 12, 2005, Unum wrote Demand to let him know that his claim for short-term disability benefits had been approved through and including June 30, 2005. Unum also advised Demand that if he was unable to return to work as of July 1, 2005, he would need to provide Unum additional medical records. Unum called Demand on June 2, 2005 to receive an update regarding his claim. Demand advised that he had scheduled an appointment with Meredith Adams, M.D., a physical therapist specialist, and had seen Don Enty, M.D., who recommended certain medical procedures to reduce his back pain. Unum reminded Demand that it would not be able to extend benefits beyond June 30, 2005, without additional medical documentation.

On June 24, 2005, Unum received Dr. Enty's medical records regarding Demand, which consisted of a one-page summary of a June 13, 2005 office visit. Dr. Enty noted that Demand had been evaluated for chronic lower back pain, and had undergone a series of lumbar facet injections, which had provided him short-term, but not long-term, relief. Accordingly, Dr. Enty suggested that they continue with the injections, but if Demand did not get a long-term response, they would discuss conducting a "facet rhizotomy." On June 30, 2005, Demand told Unum that he was working on obtaining additional medical records and was being treated by his physicians, Simon Tan, M.D. (neurologist), Dr. Hecht (cardiologist), William Kennedy, M.D. (psychologist), Dr. Enty (pain specialist), and Dr. Adams (pain specialist). Accordingly, also on June 30, 2005, Unum extended Demand's short-term disability benefits through and including August 12, 2005. On August 1, 2005, Unum received Dr. Kennedy's medical records regarding Demand.

On August 2, 2005, Unum spoke again to Demand by telephone regarding his current medical condition. Among other things, Demand stated he could not yet return to work because he

could not sit for long periods of time, "especially in the chair that he uses." Additionally, Demand stated that he would begin physical therapy on August 5, have a facet injection on August 12, and if that did not work, he would have a rhizotomy. Accordingly, on August 3, 2005, Unum extended Demand's short-term disability benefits through and including September 16, 2005. On August 4, 2005, Unum received a July 26, 2005 office visit note regarding Demand from Dr. Hadi Tajani, M.D. On September 1, 2005, Demand called Unum to advise his physicians were sending updated medical records, and that he thought he would return to work on or about September 23, 2005. On September 1, 2005, Unum also received Dr. Tan's medical records regarding Demand, including an EMG study. On September 13, 2005, Unum received Demand's CT scans and analysis, which were performed on September 8, 2005.

**D. Demand Returns to Work**

On September 16, 2005, Unum spoke to Demand by telephone regarding the status of his claim. Demand advised Unum that he was "finally able to get up and move around" and that he was now planning on returning to full-time work on September 19, 2005. Demand's physician released him to return to work with no restrictions. Based upon Demand's return to work, Unum terminated Demand's short-term disability benefits on September 16, 2005.

**E. Demand Renews His Disability Claim After the Reduction in Force Notice**

It is undisputed that on September 21, 2005 Verizon advised Demand that he would be included in a "reduction in force" effective October 21, 2005. On September 23, 2005, Demand advised Unum that Dr. Enty had reversed his decision to release Demand to work. Demand claimed he was entitled to disability benefits effective September 21, 2005. On September 26, 2005, Unum wrote Dr. Dotti requesting Demand's medical records from September 8, 2005 to the present. That

same day, Unum received Demand's records from Dr. Dotti and Dr. David Rothbart. On September 29, 2005, Unum spoke to Demand by telephone. Demand stated that he returned to work on September 19, 2005. However, he started to have back pain on September 21, 2005, and tried to see Dr. Dotti and Dr. Rothbart that day, but not could see them until September 23, 2005.

By letter dated September 30, 2005, Unum wrote Dr. Dotti asking whether he had released Demand to return to work on September 19, and then advised Demand to stop working on September 21. Unum also requested updated medical records. That same day, Unum requested that Verizon provide Unum with a detailed description of Demand's occupational duties. On October 14, 2005, Dr. Dotti responded to Unum's letter and provided it with his office notes from September 19 and September 23, 2005. On that same day, Unum wrote Dr. Tan and Dr. Rothbart inquiring whether on September 21, 2005, they had advised Demand to stop working and, if so, requested that they identify Demand's current restrictions, limitations, and course of medical treatment. On October 19, 2005, Unum received Dr. Tan's response to its October 14 letter. On October 19, 2005, a Verizon representative called Unum to explain that Demand had just informed her again that he was disabled. On October 20, 2005, Unum requested Dr. Enty's updated medical records regarding Demand. On November 2, 2005, Unum received Dr. Enty's records regarding Demand for the period from August 2005 to October 2005. By letter dated November 29, 2005, Unum advised Demand that it had received medical records from Dr. Enty, but that it needed further clarification to review his claim. Unum advised Demand that, at that time, it had not received medical information sufficient to consider extending his benefits beyond September 17, 2005.

On or about November 30, 2005, Unum told Demand that it was still waiting for his medical records from September 19, 2005 to the present. On December 1, 2005, Unum spoke with Christy

at Dr. Enty's office, who advised that Dr. Enty was on vacation, but that she could not find anything in his notes to indicate that Dr. Enty advised Demand to stop working on September 21, 2005. On December 6, 2005, Dr. Enty sent Unum a "letter of disability" stating:

> On August 22, 2005, after undergoing a series of injections, [Demand] seemed to be doing well and was discharged back to work at full duty. He was told at the time that if he had recurrence of symptoms he would have to come back to see me for repeat treatment and at that time he was to be placed on disability. . . .After his discharge to full duty, he returned in October 2005 and was found to have increasing lower back pain secondary to facet disease. . . . At this point, he will need to be on chronic disability from September 21, 2005, which is the time he started having recurrence in symptoms. He did show up in my office shortly after that time for reevaluation and treatment. I do feel that patient's current condition is possibly permanent. I feel he may need long-term disability.

On December 21, 2005, Carol Romano, R.N., a Unum nurse, reviewed all of Demand's medical records. Nurse Romano concluded:

> The objective medical evidence would support difficulty with prolonged static positions or repetitive bend twist or heavy lift outside [Demand's] reach zone. However, medical evidence does not support [restrictions and limitations] that preclude sustained sedentary and occasional light level of activity with the ability to stretch and change positions for comfort.

**F. Unum Denies Demand's Second Claim for Short-Term Disability Benefits**.

By letter dated December 29, 2005, Unum informed Demand that he was not eligible for short-term disability benefits beyond September 16, 2005. Among other things, Unum noted that Demand's medical records indicated that Dr. Enty did not advise him to stop working on September 21, 2005, and that Dr. Dotti had released him to full-time work on September 19, 2005, without restrictions. Accordingly, Unum concluded that Demand was not entitled to additional benefits:

> We recognize that you have sought and received medical care. The

information provided to us does show that you have been treated for lower back pain since March of 2005. However you were released to return to work on September 19, 2005, and on September 21, 2005 the day you were notified of the reduction-in-force you advised your doctor you would like to go back on disability. Although there are sensory deficits involving both feet and hands, based on the strength measurements and gait observances there is no evidence of loss of function. Diagnostic studies revealed diffuse degenerative changes, however, there is evidence of neurocompression, significant spinal stenosis or radiculopathy that would limit or preclude sustained or light level of physical activity with the ability to change position for comfort.

On or about January 6, 2006, Unum received another "letter of disability" from Dr. Enty stating that, after Demand was released to work with no restrictions, he returned in October 2005 with increasing lower back pain. Dr. Enty further stated that Demand "will need to be" on chronic disability from September 21, 2005, and that his condition is permanent.

## G. Demand Appeals Unum's Decision

On January 20, 2006, Unum received Demand's letter stating that he intended to appeal Unum's claim decision. In the letter, Demand claims he lied to his physicians about his pain so that he could return to work on September 19, 2005. He stated:

> When I attempted to return to work, I was still in pain but I felt that it necessary for me to return to protect my position at Verizon. I was also very much concerned that I was missing out on a great deal of the ongoing material that it was necessary to learn for me to be effective as possible. When I got the RIF call, all the muscles in my back clinched up and I thought why should I continue to fight it. I need to get back on Disability where I really belonged and which I should never have left. I already had Doctor appointments scheduled and they would confirm my disability. I made a mistake when I lied to Dr. Enty and Dr. Dottie so they'd let me return to work.

On January 23, 2006, Unum acknowledged Demand's intent to appeal its decision.

On or about January 26, 2006, Unum received a letter from Dr. Dotti, stating that he agreed

with Dr. Enty's December 6, 2005 letter and believes Demand was "possibly" permanently disabled and needed long-term disability benefits. On or about February 10, 2006, Kate Jones, a Unum appeals specialist, called Demand and explained that she would be handling his appeal. In this conversation, Demand confirmed that his back pain prevented him from working, and that he was not claiming that any of his other medical conditions were the source of his disability. On February 23, 2006, Elizabeth Israel, R.N., a Unum nurse, reviewed Demand's medical records in connection with his appeal. Nurse Israel noted the following inconsistencies in Demand's medical records:

> The insured was released to [return to work] by Dr. Enty (pain specialist) on 8/22/05. However, the insured did not go back to work until 9/19/05. The insured did not see Dr. Enty again until 10/19/05.
>
> There was a gap in Dr. Dotti's (PCP) records from 6/05 through 9/19/05. However, on 9/19/05 the insured saw Dr. Dotti for a [return to work] note as he had returned to work on 9/19/05. This is inconsistent as the insured was released to go back to work on 8/22/05 and the insured did not see Dr. Dotti from 6/05 through 9/19/05. It is not clear who was supporting disability. On 9/19/05 there was no documentation of any worsening of his lower back pain, he looked healthy appearing in no distress, and no medication adjustments were made. Dr. Dotti instructed the insured to return in 3 months for a complete physical exam. On 9/21/05 the insured was apparently notified by his employer that he was going to be laid off as of 10/21/05. The insured consulted with Dr. Dotti on 9/23/05 for worsening of his lower back pain and he indicated 'Would like to go back on short-term disability.' Dr. Dotti indicated he was going to leave the disability up to a pain specialist and neurosurgeon and he was not going to see the insured in follow-up for 3 months. This is inconsistent for someone 'in a lot of pain' resulting in a total loss of functional capacity.

On March 10, 2006, Demand told Unum he was seeing a new spine surgeon, Dr. Stephen Timon, who would be providing additional medical records. Those records were received on March 11, 2006. On March 14, 2006, Dr. R. A. Hill, a Unum vice-president and medical director, reviewed

all of Demand's medical records in connection with his appeal. Dr. Hill made the following conclusions:

> Medical records do not describe an intensity of treatment consistent with a severity of disease that would support a total lack of functional capacity. However, Dr. Hill did find Demand's medical records supported the following restrictions and limitations:
>
> • Occasional standing/walking/stair climbing as defined by DOT.
>
> • No static positioning without the ability to shift position as necessary to maintain comfort.
>
> • No lifting greater than 20 lbs. on an occasional basis, no lifting greater than 10 lbs. on a frequent basis.
>
> • No strenuous exertion.
>
> • No push/pull greater than 30 lbs.
>
> • No highly repetitive trunk motions.
>
> • Positional activities (squatting/bending/stooping/kneeling/crawling) are limited to no more than brief periods on a limited basis. For example, it is reasonable that Mr. Demand would be able to bend/stoop/squat as required to get something out of a floor level cabinet or drawer, but not assume these types of positions to perform work activities.

On March 21, 2006, Unum contacted Demand's employer regarding his job description as a senior staff consultant. Demand's employer completed a job description form and confirmed that Demand's occupation required sitting in front of a computer and typing most of the day. On March 27, 2006, Unum then requested that Richard Byard, a Unum Vocational Consultant, review Demand's job restrictions and occupational duties. Byard concluded that:

> The physical demands of [Demand's] occupation would not exceed his level of work capacity as described in the stated [restrictions and limitations]. None of the specific [restrictions and limitations]

described in [Dr.] Hill's review would serve to prevent [Demand] from performing the material and substantial duties of his occupation.

## H. Unum Affirms Its Denial of Short-Term Disability Benefits

On April 10, 2006, Unum informed Demand that it had completed the review of his appeal, and determined that the original decision to deny him short-term disability benefits was appropriate. Unum had reviewed all of Demand's medical records and job information, and determined:

> Our physician considered the documented degenerative disease of your spine and the compression fracture of L1. Based on his comprehensive review of the available medical information, our physician concluded that reasonable restrictions and limitations related to your back condition include, occasional standing/walking/stair climbing; no static positioning without the ability to shift position, as necessary to maintain comfort; no lifting greater than 20 lbs. on an occasional basis; no lifting greater than 20 lbs. on a frequent basis; no strenuous exertion; no push forward/pull greater than 30 lbs.; no highly repetitive trunk motion; and positional activities (squatting/bending/stooping/kneeling/crawling) are limited to no more than brief periods on a limited basis. We note that these restrictions and limitations are not inconsistent with those provided by your own physicians, Dr. Dotti and Dr. Tan. We obtained information regarding your position of Senior Staff Consultant from your employer, and your entire file was forwarded to our vocational department for review. Our vocational resource considered the available information and opined that the essential functions of your own job include reviewing and preparing non-standard business contract documents for large customers. As described, your job is performed in an office-space setting and requires frequent computer based work throughout the day. The job is typically performed in a sitting posture with the occasional opportunity for standing and/or walking interspersed throughout the day. The lifting/exertion of force requirements of the job would not exceed the 10 lbs. threshold. It was concluded that the essential functions of your job at Verizon would not exceed your medically supported work capacity. Based on this comprehensive review, it is our opinion that the medical information in your file does not substantiate a level of impairment from a physical condition that would preclude you from performing the essential functions of your own job as your return to work on September 19, 2005.

On April 23, 2006, Demand provided Unum with another letter from Dr. Timon, wherein he advised that he was recommending that Demand have a spinal fusion, which would require somewhere between three or four months to recover.

## I. Demand "Re-Appeals" the Denial

On April 28, 2006, Demand's wife returned Unum's call and confirmed that Demand intended to re-appeal Unum's decision and had provided Dr. Timon's report in support of that re-appeal. Accordingly, by letter dated April 28, 2006, Unum acknowledged receipt of the new information and that Demand intended to appeal the decision. By letter dated June 4, 2006, Demand formally advised Unum that he intended to re-appeal Unum's decision regarding his claim, and provided Unum with a March 29, 2006 letter from Dr. Timon, a May 19, 2006 letter from Dr. Dotti, a May 25, 2006 letter from Dr. Tan, and copies of post-operative reports and discharge summaries from Dr. Timon and Dr. Ammons. On June 27, 2006, Unum wrote to Dr. Tan, Dr. Enty, Dr. Dotti and Dr. Timon, and requested any additional medical records they possessed regarding Demand. Unum received additional medical records from Demand's doctors and asked Nurse Israel and Dr. Hill to review those records. On August 29, 2006, Nurse Israel completed her review of those records. Nurse Israel summarized Demand's records and treatment, but deferred the disability questions to Dr. Hill. On September 12, 2006, Dr. Hill reviewed the medical records, and made the following conclusions:

> I note the presence of the medical records from Dr. Timon describing his evaluation of Mr. Demand on 3/3/06 and subsequent surgical treatment. As stated in my previous review, Dr. Timon's evaluation did not provide any information clarifying Mr. Demand's functional capacity as of the date of interest. The above summarized medical records provide the clearest documentation of Mr. Demand's level of

complaint as of the date of interest. These records have been previously reviewed. On 9/19/05 and 12/22/05, Dr. Dotti described normal physical exams. On the first September visit he specifically described no complaints related to the back and did not perform a musculoskeletal exam. He indicated Mr. Demand returned after being laid off at work. Diagnoses described in addition to the neck and back pain complaints included mixed hyperlipidemia, other and unspecified alcohol dependence, tobacco use disorder, depressive disorder, hypertension, status post cerebral vascular disease, chronic airway obstruction, and osteoporosis. The medical records do not describe any comorbid diagnoses. It is my opinion within a reasonable degree of medical certainty that the newly submitted material does not contain information sufficient to alter my previously stated opinion that Mr. Demand's level of functional capacity as of 9/16/05.

## J. Unum Re-Affirms the Denial

By letter dated September 14, 2006, Unum advised Demand that it had completed its additional appellate review and had concluded its original decision was correct. Unum informed Demand that it had concluded:

> Based on the medical information provided to date, our medical department indicated that the additional documentation does not provide evidence to refute the findings of the prior medical review or the conclusions of the appellate review. Though your records reflect surgical treatment by Dr. Timon in April 2006, the records provided by Dr. Timon do not support any information clarifying your functional capacity as of September 21, 2005, the date you were reportedly unable to continue working due to back pain. It was concluded that prior medical evaluation remains unchanged by the additional documentation provided to date. That is, the medical documentation supports restrictions and limitations which would not preclude you from performing the material and substantial duties of your prior occupation as a senior staff consultant. Please refer to our prior appeal decision letter dated April 10, 2006 for details regarding the medical and vocational findings of the initial appeal review.

On October 29, 2007, Demand filed this suit against Unum. On September 29, 2008, Demand filed an Amended Complaint joining Verizon as a party. As of the date of this order,

Demand has not returned proof of service on Verizon. In his Amended Complaint, Demand claims a right to recovery against Unum for (1) benefits due under the employee welfare benefit plan under 29 U.S.C. § 1132(a)(1)(B), (2) punitive damages for Unum's "willful, wanton, intentional, malicious" denial of benefits in "reckless disregard of its duty to deal fairly and in good faith;" and (3) attorney's fees. In response, Unum filed its Second Amended Answer and a Counterclaim against Demand for attorney's fees.

On November 3, 2008, Unum filed its Motion for Summary Judgment. Demand filed a response that does not dispute the statement of facts made by Demand. However, Demand does discuss the medical records dated April 24, 2006 through May 1, 2006, which were included in Unum's appendix and referenced in its statement of facts. Demand argues Unum's doctors and nurses "completely disregarded" these records in reviewing his appeal and making their conclusions regarding his disability claim. Demand presents no evidence to dispute the sequence of events presented by Unum in its extensive statement of facts. In essence, Demand only disputes the conclusions made by Unum's doctors and nurses after reviewing his claim on the grounds that they disregarded certain medical records which he argues substantiate his disability.

## II. Legal Standards

### A.     Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting

of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed R. Civ. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

## B. Abuse of Discretion Standard of Review

The denial of benefits by a plan administrator challenged under 29 § 1132(a)(1)(B) of ERISA is to be reviewed by the district court de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114–15 (1989); *see also*

*Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 332–33 (5th Cir. 2001). In applying the abuse of discretion standard, the Court analyzes whether the plan administrator acted arbitrarily or capriciously. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994). If the plan administrator's decision is "supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

The plan administrator's decision is not abuse of discretion when it is "based on evidence, even if disputable, that clearly supports the basis for its denial." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc). However, "without some concrete evidence in the administrative record that supports the denial of the claim," then the administrator abused its discretion. *Id.* at 302; *see also Gooden*, 250 F.3d at 333. In reviewing the plan administrator's factual determinations in denying plan benefits, the Court must limit its review to the administrative record available to the plan administrator at the time it made its decision. *Gooden*, 250 F.3d at 333; *Vega*, 188 F.3d at 287, 299.

In this case, by the terms of the "Administrative Services Agreement Self-Insured Income Protection Plan" (the "ASA"), Verizon delegated its "discretionary authority and decision making responsibility" in administering disability benefit claims to Unum. Therefore, the abuse of discretion standard will be applied to review Unum's factual determinations in denying Demand's short-term disability claim. *See Bruch*, 489 U.S. at 114–15; *Sweatman*, 39 F.3d at 598.

## C. Burden of Proof

The claimant has the burden of proof under ERISA to show that the plan administrator abused its discretion. *Ellis*, 394 F.3d at 273. In *Ellis*, a claimant had argued that the plan fiduciary had abused its discretion in determining she was not disabled where she asserted "substantial

evidence support[ed] her claim of total disability." *Id.* The Fifth Circuit stated "[t]his argument misapprehends the burden of proof under ERISA." *Id.* It further noted, "t[]he law requires only that substantial evidence support a plan fiduciary [or plan administrator]'s decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Id.* (emphasis in original). The Fifth Circuit went on to further clarify the burden by instructing that "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The court bluntly stated, "[w]e are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance." *Id.*

### III. Demand's ERISA Claim

Demand challenges Unum's denial that his short-term disability claim under section 1132(a)(1)(B) of ERISA. Demand asserts that Unum's denial of his claim was arbitrary and capricious, and was not supported by substantial evidence. He argues that medical records clearly show he was disabled "during the time-period in which his claim was being appealed."

### A. Applicable Law

ERISA authorizes a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. 1132(a)(1)(B). Therefore, the district court is authorized to review a plan administrator's denial of disability benefits. *Sweatman*, 39 F.3d at 597.

In *Sweatman*, the plaintiff argued that the benefit plan administrator had made the wrong

decision in denying benefits because it attached too much weight to the results of its own investigations and not enough weight to the opinions of the plaintiff's doctors. *Sweatman*, 39 F.3d at 601. Essentially, the plaintiff argued that although the administrator reviewed all of the medical records, it came to the incorrect conclusion that plaintiff was not entitled to disability benefits. *Id.* at 601–02. In that case, the district court found, and the Fifth Circuit affirmed, that it was not abuse of discretion for the plan administrator to choose the position of its own investigations over the opinions of the claimant's doctors. *Id.* at 602.

In a case where the claimant made his claim for disability benefits after learning he was to be included in a reduction in force, the Fifth Circuit held the plan administrator did not abuse its discretion in denying benefits where there was evidence that the claimant was "capable of fulfilling the duties of his job prior to his termination." *Gooden*, 250 F.3d at 333. Furthermore, the Court noted that while the record did contain a doctor's letter stating that the claimant was disabled, "this letter does not undermine [the plan administrator]'s decision, as it was written after [claimant] learned he was being terminated, and was unaccompanied by medical evidence indicating that [claimant]'s condition changed since the last time [the doctor] had seen [claimant]. *Id.* at 333–34. The Fifth Circuit reasoned that the plan administrator "cannot be faulted for failing to give [the doctor]'s letter overriding significance in the face of medical documentation, including [the doctor]'s own reports, indicating [claimant] was not disabled." *Id.* at 334.

**B. Application of Law to Facts**

In order to be entitled to a summary judgment on Demand's claims, Unum must prove there is no genuine issue of material fact for trial on the issue of whether its denial of benefits is supported by substantial evidence and is not erroneous as a matter of law. As demonstrated by the undisputed

facts, Unum has presented substantial evidence that Demand was able to perform the essential functions of his position at the time of his disability claim.

It is undisputed that on August 22, 2005, Dr. Enty noted that Demand "seemed to be doing well" and cleared him to return to work. Dr. Dotti cleared him to return to work on September 19, 2005. The medical records reviewed by Unum's doctors and nurses did not show any functional loss that would prevent Demand from performing the essential duties of his position. Demand was informed on September 21, 2005 that he would be included in a reduction in force effective October 21, 2005. Demand claims his disability arose as of that date as well.

Demand's Response to the Motion for Summary Judgment focuses solely on the medical records from April 24, 2006 through May 1, 2006 as proof that Demand was disabled. Demand points to these medical records to support his disability, but those records are only relevant to any disability *after* his termination date of October 21, 2005. Furthermore, Demand's argument that Unum's doctors and nurses "completely disregarded" these medical records in making their decision is similar to the argument of the plaintiff in *Sweatman*. In that case, the Fifth Circuit held it is not abuse of discretion for the plan administrator to choose the position of its own investigations over the opinions of the claimant's doctors. *See Sweatman*, 39 F.3d at 601–02. Here, Unum's doctors, nurses, and investigators reported that Demand was not disabled based on their reviews of Demand's medical record. One investigator noted that the physical demands of Demand's occupation would not exceed his level of work capacity. It is not an abuse of discretion for Unum to adopt the opinions of its own doctors, nurses, or investigators as long as those opinions are substantiated by the medical records. *See id.* at 602.

Additionally, as in *Gooden*, the letters from Demand's doctors stating he is disabled as of

September 21, 2005 arose *after* the date he was notified of his termination and are not supported by medical evidence of a change in his functional capacity. *See Gooden*, 250 F.3d at 333–34. Unum cannot be faulted for failing to give these letters "overriding significance" in the face of other evidence that Unum had the functional capacity to perform the essential duties of his position. *See id.* The Court notes that Unum's documentation regarding the investigation into Demand's functional capacity at the time of his disability claim, the review of Demand's medical records, and the explanation of Unum's reasons for denial is extensive and detailed.

While Demand points to what he argues is substantial evidence supporting his claim of disability, the Court finds that this "misapprehends the burden of proof." *See Ellis*, 394 F.3d at 273. The burden is on Unum to prove that its decision to deny benefits was supported by substantial evidence and was not arbitrary or capricious. *See id.* Unum has met its burden. The administrative record contains substantial evidence that supports Unum's decision and the Court finds the denial of benefits was not arbitrary or capricious. *See id.* Accordingly, Unum prevails on its motion for summary judgment on Demand's ERISA claim under section 1132(a)(1)(B).

## IV. Demand's Remaining Claims

Demand's remaining claims are for punitive damages for Unum's "willful, wanton, intentional, malicious" denial of benefits in "reckless disregard of its duty to deal fairly and in good faith;" and for attorney's fees. In his Response to Unum's Motion for Summary Judgment, Demand concedes that punitive damages are not recoverable under ERISA and to the extent that it could be argued he is asserting a bad faith claim, such claims are preempted by ERISA. *See Hutchinson v. Reliastar Life Ins. Co.*, 2007 WL 2687610, at *7 (N.D. Tex. Sept. 12, 2007). Furthermore, Demand is not entitled to recoup his attorney's fees in this action because he has not prevailed on

his claims.  Therefore, Unum prevails on its Motion for Summary Judgment on Demand's claims for punitive damages and attorney's fees.

## V.  Conclusion

The Court **GRANTS** partial summary judgment in favor of Unum on all of Demand's claims against it.  Accordingly, all of Demand's claims against Unum are **DISMISSED**.  Demand's claims against Verizon, who has yet to be served in this action, and Unum's counterclaim for attorney's fees remain to be resolved.

SO ORDERED.

Dated: January 13, 2009

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE